Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, March 31, 2008 4:47:58 PM

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TIMOTHY MICHAEL VANDERNICK and | ) | CASE NO. 07-1068 |
| ROBIN LEE VANDERNICK, | ) | |
| | ) | CHAPTER 13 |
| Debtors. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| JONATHAN NORMAN and | ) | CASE NO. 07-1192 |
| MELISSA DARLENE NORMAN, | ) | |
| | ) | CHAPTER 13 |
| Debtors. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| TERRY EDWIN PYLES and | ) | CASE NO. 07-1024 |
| LOIS MARY PYLES, | ) | |
| | ) | CHAPTER 13 |
| Debtors. | ) | |

## MEMORANDUM OPINION

Timothy and Robin Vandernick, Jonathan and Melissa Norman, and Terry and Lois Pyles (collectively, the "Debtors"), all own cars purchased within 910 days of their respective Chapter 13 bankruptcy filings. Creditors holding state law security interests in such vehicles have what is commonly called a "910 car claim" because such creditors are afforded certain rights according to the hanging paragraph following 11 U.S.C. § 1325(a)(9). The Debtors, or their Chapter 13 trustee (the "Trustee"), contest the amount of interest that the Debtors must pay to their 910 car creditors in their Chapter 13

1

plans.[1]

AmeriCredit Financial Services, Inc. ("AmeriCredit), holds a security interest in the Vandernicks 2005 Nissan truck. AmeriCredit filed a proof of claim for a secured obligation in the amount of $37,538.12 with a 10.9% interest rate. The Vandernicks propose to pay AmeriCredit $36,630.98 with no interest.

HSBC Auto Finance ("HSBC") holds a security interest in the Normans' 2007 Hunda and filed a proof of claim for $18,618.54. The Normans' Chapter 13 plan proposes to pay HSBC $17,000 at an 8% interest rate. The retail installment contract, which sets forth the transaction, shows that the total amount financed was $17,774.59 at an interest rate of 20.59%. HSBC objects seeks to be paid the amount of its proof of claim with the contract rate of interest.

Fifth Third Bank ("Fifth Third") holds a security interest in the Pyles 2004 Ford. The Pyles propose to pay Fifth Third $20,650 over the life of their Chapter 13 plan without the payment of interest. Fifth Third filed a proof of claim in the amount of $20,826.74 and objects to being paid without interest.

## DISCUSSION

These three cases have been gathered together for the limited purpose of issuing a joint memorandum opinion since the issue at stake in each of them is identical. The issue pertinent to all is whether, and to what extent, a creditor secured by a purchase money security interest in a motor vehicle purchased within 910 days of the filing of a bankruptcy petition is entitled to post-petition interest on its claim. In addressing the issue, the court will first address whether 910 car creditors have allowed secured claims within the meaning of 11 U.S.C. § 1325(a)(5). Concluding that 910 car creditors do in fact hold such claims, the court will address the appropriate rate of interest to be paid.

**A. 910 Car Claims & § 1325(a)(5)**

The Debtors argue that the claims held by AmeriCredit, HSBC, and Fifth Third (collectively, the "Creditors") are not entitled to be paid interest on the grounds that the hanging paragraph explicitly makes

---

[1] The Vandernicks also contest whether their secured creditor holds a 910 car claim. By order of the court entered in the Vandernicks' case on December 3, 2007, the court ordered briefing only on their secured creditor's entitlement to post-petition interest. Therefore, the court's opinion assumes for the purposes of this opinion that the Vandernicks' creditor holds a 910 car claim.

2

§ 506 of the Bankruptcy Code inapplicable to 910 car claims. The Debtors assert that, without passing through the § 506(a) gateway, no mechanism exists to treat the Creditors' claims as secured under § 1325(a)(5).

Treating 910 car claims as secured under § 1325(a)(5) is important because, as a requirement of plan confirmation, a secured creditor that does not accept the plan must be paid a value, as of the date of the plan, that is not less than the allowed amount of such claim. *Drive Financial Services, L.P. v. Jordan (In re Jordan)*, No. 07-40265, 2008 U.S. App. LEXIS 5334 at *5-6 (5th Cir. March 12, 2008). This requirement is generally understood to mandate the payment of interest to account for the time value of money. *Jordan*, 2008 U.S. App. LEXIS at *6 (citing *Till v. SCS Credit Corp.*, 541 U.S. 465, 487 (2004)).

Courts have split in determining whether a claim that falls within the parameters of the hanging paragraph is an allowed secured claim subject to the requirements set forth in § 1325(a)(5)(B)(ii). Three distinct approaches have evolved regarding the resolution of this issue. The first approach holds that the language of the hanging paragraph means only that claims falling within its ambit can't be bifurcated. It does not mean that such claims are not secured; thus, post-petition interest must be provided for in the plan. *Citifinancial Auto v. Hernandez-Simpson (In re Hernandez-Simpson)*, 369 B.R. 36, 41 (D. Kan. 2007) (quoting *In re Brown*, 339 B.R. 818, 820 (Bankr. S.D. Ga. 2006) ("[T]he vast majority of courts considering the issue, holds that the hanging paragraph 'means only that the claims [the Section] describes cannot be bifurcated into secured and unsecured portions under § 506(a).' This interpretation has the effect of quantifying a 910 creditor's claim at the balance due to the creditor on the petition date and assumes that a 910 creditor's claim is a secured claim")).

The second approach finds that "creditors holding 910 claims are not entitled to secured claims for purposes of § 1325(a)(5) because the hanging paragraph prohibits application of § 506(a) to 910 claims and § 506 is the only path to the establishment of a secured claim for bankruptcy purposes. Instead, a creditor with a 910 claim 'must receive the greater of: (1) the full amount of the claim without interest; or (2) the amount the creditor would receive if the claim were bifurcated and crammed down (i.e., secured portion paid with interest and unsecured portion paid pro rata).' " *Id.* (quoting *In re Carver*, 338 B.R.

3

521, 528 (Bankr. S.D. Ga. 2006)).

Finally, the third approach construes the language of the hanging paragraph as written, "leaving a creditor with an allowed claim for the entire prepetition debt that must be paid in full but without postpetition interest through the duration of the Chapter 13 plan. *Id*. at 41-42 (citing *In re Wampler*, 345 B.R. 730, 735 (Bankr. D. Kan. 2006)).

As noted, the Debtors urge that the only manner in which a claim may be designated as secured within a Chapter 13 bankruptcy proceeding is by § 506(a), and since § 506(a) is inapplicable to claims within the parameters of the hanging paragraph, such claims cannot be secured. Section 506(a)(1) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

This court adopts the view that the hanging paragraph merely prevents the bifurcation of a 910 claim; it does not destroy its character as an allowed secured claim. The court adopts this view for two reasons. First, § 506(a) does not provide for the definition of an allowed secured claim; rather, it provides a means by which to measure the amount of an allowed secured claim. *In re Morris*, 370 B.R. 796, 798 (E.D. Wis. 2007). *See also In re Wright*, 492 F.3d 829, 832 (7th Cir. 2007) ("[I]t is a mistake to assume, as the majority of bankruptcy courts have done, that § 506 is the only source of authority for a deficiency judgment when the collateral is insufficient"); *DaimlerChrylser Financial Services North America, LLC v. Wilson (In re Wilson)*, 374 B.R. 251, 255 (B.A.P. 10th Cir. 2007) ("[W]e agree with the majority view that § 506(a) is not a definitional section dictating the only method of obtaining an 'allowed secured claim.' "); *In re Montoya*, 341 B.R. 41, 44 (Bankr. D. Utah 2006) ("The existence of a claim is usually determined by non-bankruptcy substantive law, whereas valuation of that claim is determined by § 506").

4

Second, a creditor's rights are initially determined by state law, and those rights may then be altered by provisions of the Bankruptcy Code. *Butner v. United States*, 440 U.S. 48, 55 (1979); *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000). Therefore, a creditor's status as secured is determined under relevant state law. *Wright*, 492 F.3d at 832. Because the hanging paragraph does not explicitly strip claims of their secured status, § 1325(a)(5) governs the treatment that those claims are entitled to receive in a Chapter 13 plan. *In re Shaw*, 341 B.R. 543, 546 (Bankr. M.D.N.C. 2006); *In re McCormick*, No. 06-23358-svk, 2006 Bankr. LEXIS 3377 at *7 (Bankr. E.D. Wis. December 5, 2006) ("In other words, if § 506 does not apply to reduce the allowed amount of the claim to the value of the collateral, the entire claim is a secured claim, and the debtor must pay the entire amount to satisfy § 1325(a)(5)(B)").

The Pyles suggest that Fifth Third's claim, while secured, is not an allowed claim because § 502(b)(2) disallows a claim for unmatured interest. Section 502(a) provides that a claim, proof of which is filed under § 502, is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(1). No objections have been filed to any of the Creditors' proof of claims. Therefore, their claims are allowed. Furthermore, the proof of claims filed by the Creditors do not include claims for unmatured interest. The proof of claims represent only the balance due on the petition date.

Here, each of the Creditors in these cases holds a purchase money security interest in the respective collateral, and, therefore, they each hold allowed secured claims under state law. Thus, the claims of the Creditors that are allowed under § 502 and secured under nonbankruptcy law must be treated in accordance with the requirements of § 1325(a)(5)(B)(ii).

### B. The *Till* Rate of Interest Applies to the Creditors' Claims

Having found that the Creditors' hold allowed secured claims that are governed by the provisions of § 1325(a)(5)(B)(ii), the court is next required to determine the appropriate rate of interest to be paid on the claims. HSBC urges that it is entitled to receive its contract rate of interest, while Fifth Third and AmeriCredit contend that the interest rate is to be calculated as set forth in *Till*. *Till*, 541 U.S. at 491.

The hanging paragraph places no prohibition on the modification of 910 claims with the exception

of bifurcation. Under §1322(b)(2), a debtor may propose a plan that modifies the rights of secured creditors so long as "it provides the lien retention-present value-periodic payments treatment required under § 1325(a)(5)(B)." *In re Fleming*, 339 B.R. 716, 723 (Bankr. E.D. Mo. 2006). In *Till*, the Supreme Court stated that the provisions of § 1325(a)(5)(B)(ii) require that a claim be paid in full at the time of confirmation or in periodic payments with interest. *Till*, 541 U.S. at 473-74. *Till* requires the application of a prime-plus approach to determine the proper interest rate. The provisions of § 1325(a)(5)(B)(ii) were not altered by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and, therefore, this court finds that there is no reason to depart from the mandates of *Till*. *Jordan*, 2008 U.S. App. LEXIS at *12 ("BAPCPA did not amend the definition of value under section 1325(a)(5)(B), nor did it prohibit bankruptcy courts from altering the contractual terms for secured claims. Since these were the issues decided by *Till*, we hold that Congress did not supercede *Till* when it passed BAPCPA.") .

## CONCLUSION

For the reasons set forth herein, confirmation of the Debtors' proposed Chapter 13 plans will be denied because they have failed to adequately provide for interest on the full amount of the claims owed to the Creditors.